**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------- X

MARY NAMORATO                                                  :
                                                              :
          Plaintiff, on behalf of herself     :     Civil Action No.
          and all others similarly situated,  :
                                                              :
    -against-                                        :     **CLASS ACTION COMPLAINT**
                                                              :
TOWN SPORTS INTERNATIONAL, LLC and                            :
TOWN SPORTS INTERNATIONAL HOLDINGS,                           :     **Jury Trial Demanded**
INC. d/b/a NEW YORK SPORTS CLUBS,                             :
                                                              :
          Defendants.                         :
-------------------------------------------------------------- X

Plaintiff Mary Namorato alleges against Defendants Town Sports International LLC and Town Sports International Holdings, Inc. (together "TSI") as follows:

<u>PRELIMINARY STATEMENT</u>

1.      At a time when New Yorkers are using all their efforts to help one another and make sacrifices necessary to meet the daily challenges associated with a the health and economic crisis created by the novel coronavirus are suffering, TSI – the publicly-traded company which owns and operates the ubiquitous gym brand New York Sports Clubs ("NYSC") – is defrauding and stealing from customers.

2.      All NYSC gyms are currently closed and non-operational.  Nonetheless, TSI is outrageously continuing to charge members their monthly membership dues, which are paid for one purpose and one purpose only – to access NYSC gyms.  By contract and by law, TSI charges customers membership dues strictly *in exchange for gym access*, and despite not providing such gym access it continues to charge customers' credit cards.

3.      People around the country are feeling enormous financial strain due to "shelter-in-place" regulations, business closures, abrupt mass layoffs and the recent market collapse.  As a

result, numerous gyms chains have on their own accord announced that membership charges will be suspended.[1]  TSI has not – and this conduct is the height of corporate greed, lack of empathy and putting profits before people.

4.      The scope of this conduct cannot be overlooked.  According to TSI's Form 10-K annual report filed with the Securities and Exchange Commission ("SEC") on March 20, 2020 (the "2019 Annual Report"), the company boasts 605,000 members,[2] who pay monthly membership dues ranging from approximately $30 to $120.[3]  Therefore, even assuming average monthly rate of $50, TSI is stealing $30,250,000 per month from customers.

5.      To make matters worse, during this time, TSI has also made it virtually impossible for members to cancel their memberships and has refused to honor many members' cancellation requests.  NYSC has a long history of refusing to honor member cancellation requests, but it is particularly reprehensible in this moment.  NYSC members have been frantically posting messages on Yelp! and Facebook seeking help to avoid further charges:

---

[1]      See, e.g., Equinox https://www.equinox.com/covid19update?icmp=banner-covid (stating "Your membership will be put on freeze at no cost as of the day the club closed. No further action is required to freeze"); *Planet Fitness* https://www.planetfitness.com/health ("Out of an abundance of caution, all of our clubs have closed until further notice. As your long-term partner in fitness, we have proactively frozen all memberships on your behalf, and you will not be charged any fees during this time"); *Blink Fitness*  https://www.blog.blinkfitness.com/blink-fitness-gym-updates ("What happens to my membership if my gym is closed? You will not be billed during the time that your Blink gym is closed. Your membership will be put on freeze until we re-open. No action is needed on your part to start the freeze."); *Barry's BootCamp* https://www.barrys.com/covid-19/ ("For any existing reservations, we will return these classes to your account. Additionally, all class packages and memberships will be adjusted to reflect the duration of these closures").

[2]      See https://investor.mysportsclubs.com/static-files/3218e839-c8aa-4d2a-ad14-907e8f27ffd6 (last accessed March 25, 2020).

[3]      See https://www.newyorksportsclubs.com/clubs/23rd-park; https://www.newyorksportsclubs.com/clubs/forest-hills (last accessed March 25, 2020).

 **Kaci Higgins** Considering you have laid off your staff for the clubs there needs to be some response that you will NOT be charging until the gym reopens. If you don't do this I can guarantee you will end up having to shut down anyway because you will lose so many customers who do not like the way you are treating your staff. Literally the only reason people go back. My husband and I go to the gym because our son asks us every day to go see Kelly who runs the babysitting room. RESPOND TO YOUR CUSTOMERS!

Like · Reply · 1w  20

 **Jim King** You really need to make some kind of announcement about how you are handling our membership and locker rental fees while the gyms are closed and cannot be used. Are you temporarily freezing all memberships and suspending fees until you reopen? Why is this information not included in the announcement about temporary closing?

Like · Reply · 6d  16

 **Kelli J Fancie** I'm a member at TMPL and have been trying to freeze my membership. No ONE is answering emails. With all That's happening in the world it's shameful to have to chase up a company to freeze a membership when we're unable to utilize the gyms.

They are very quick to send an email about everything else so why not send an email about freezing memberships as a sign of good faith in humanity?!

Like · Reply · 6d · Edited  31

 **Suzie KY** Are you going to stop charging us for the membership while the NYSC is closed? Since we have no access I don't think it's fair to be charged. I have not gone since January since the news has been announced so if there is additional charges I might have to think about cancelling. Hope someone gets back to me. Thanks!

Like · Reply · 5d  9

 **David Eduardo Aanderud** You give no information about nothing, this is so annoying. You need to communicate with members.

Like · Reply · 6d  14

 **Rodger Padgett** So How are we going to be refunded our monthly membership paid for those days you are closed and are you freezing future payments until your clubs are actually letting us use the facilities again?

Like · Reply · 6d  3

 **Robin Collymore** I STRONGLY SUGGEST MEMBERS CALL THEIR CREDIT CARD COMPANIES AND HAVE THEM BLOCK CHARGES FROM NYSC ..They've demonstrated how they treated their staff.. Fired without notice... no 2 weeks pay.... a convoluted process for rehire......what makes you think members will be treated differently?

Like · Reply · 2d  9

 **Christine Palma** I did not receive any sort of communication from NYSC about closure or freezing membership. Is it time for a class action?

Like · Reply · 6d  10

 **Miriam Colon** Dues for members should be suspended while gym is closed. We deserve the same respect. We should all get prorated for the time gym is closed. I am a Bayridge Brooklyn member.

Like · Reply · 6d  20

 **Stefanos Koroneos** We all want to know if you are freezing out memberships. Your silence from you side is totally not acceptable

Like · Reply · 5d  25

 **Sara Cristina** New York Sports Clubs Where is the written communication to members? I called my home club and was told corporate communications would send out instructions. I haven't received anything. We need an infokit with next steps to take!!!!!!!!!!!!!!!!

Like · Reply · 5d  7

 **Greg Endries** Same question as everyone else: Will you be freezing our membership dues while closed during this period?

Like · Reply · 4d  5

 **Rachel Jelderks** Hi, I have tried emailing and contacting the gym. Since the gym is closed I would like my membership suspended for the time being (i already got charged this month). Can someone advise?

Like · Reply · 2d

 **Maria Arroyo** Looking for a coronavirus update, Any word on if members will be receiving a credit on the monthly membership dues, should we freeze our accounts until the Gym opens again

Like · Reply · 2d



**Monse B.**
Brooklyn, Brooklyn, NY
↓↑ 144 friends
⭐ 2 reviews

 3/16/2020

At any other time, I'd give at least 3 stars because it's a decent gym, close to my home and I get what I need from it -- basic machines and clean environment.

However, I'm kind of appalled with the way they've handled the COVID-19 pandemic. It took a shut down from the city for them to finally close their doors and when they did -- they've offered no information on how they're planning to handle memberships during this time. Even the announcement is in tiny print on their site as if they're hoping no one notices!

What are you all planning to do about memberships? Are you seriously hoping we'll all pay for a full time membership we're not using? This is especially strange behavior given that small, independently owned fitness studios have had to shut down as well and they have all been upfront about what they're planning on doing in the interim.

You owe it to your members to breakdown your plan and you've definitely have had time to come up with solutions. And you owe us more than , "we will miss all of our valued members and whenever this passes we'll be back at our clubs waiting for you." I refuse to continue paying you indefinitely for a service I'm not using, plain and simple. I wrote an email and will update this review when I hear back.



**Alexa R.**
Manhattan, New York, NY
↓↑ 187 friends
⭐ 2 reviews

⭐ 3/19/2020 · 🔄 Updated review

Nysc please freeze my membership. The gyms shut down Monday and no one emails back about freezing gym membership 4 days later . Unacceptable. And unacceptable to fire your entire staff.







6.      Despite these pleas and cries for help, TSI has failed to provide customers any substantive response to these requests – leaving customers effectively "dangling in the wind" to try to figure out how to protect themselves from being further charged for services not being provided.  Of course, TSI likely prefers it this way as it makes it excessively difficult to cancel one's membership, if possible at all.

7.      This is hardly the first case filed against TSI for taking advantage of customers whose credit cards TSI has on file and fraudulently charging them fees and dues.  TSI has a well-documented pattern of engaging in deceptive, dishonest and fraudulent conduct that amounts to stealing from and ripping-off its customers who are desperately trying to cancel memberships.

8.      In 2016, the Washington, D.C. Attorney General's Office (the "DC AG")
investigated TSI (with respect to its Washington Sports Clubs-branded locations) for fraudulently
refusing to allow customers to cancel their memberships.  In November 2016, the DC AG issued
a press release describing a settlement which stated:

> Consumers should not be on the hook when companies mislead
> them with unclear and inconsistent cancellation policies.
> Washington Sports Club members who made a good-faith effort to
> end their membership deserve the restitution that this settlement
> provides . . . Although the membership agreements stated that
> consumers must cancel in writing and give 30 days' notice, club
> employees routinely told consumers that they could cancel at any
> time by informing a desk employee or manager at the club. The
> company then continued to charge consumers who canceled in this
> manner.[4]

9.      Following this settlement, TSI made no genuine changes and continued to operate
with a "business as usual" approach – outright disregarding customers who wanted to cancel
their membership and continuing to charge their credit cards.

10.     In 2018, 65 individuals – TSI gym members from six different states – filed two
separate a class action lawsuit against TSI claiming that they were subject to nearly identical
fraudulent business practices as what had been investigated by the DC AG.  See Lehnert, et al. v.
Town Sports International, LLC, et al., No. 18-cv-02705 (S.D.N.Y. filed December 7, 2018)
(Second Amended Complaint with 55 plaintiffs); Tuan, et al. v. Town Sports International, LLC,
et al., No. 19-cv-02812  (E.D.N.Y. filed May 13, 2019) (10 plaintiffs also alleging that TSI
refused to honor cancellation requests and continued to charge customers following cancellation
requests).

---

[4]      Available at:  https://oag.dc.gov/release/attorney-general-obtains-settlement-washington
(last accessed March 25, 2020).

11.     On January 8, 2019, the DC AG filed yet another lawsuit against TSI captioned as

District of Columbia v. Town Sports International, LLC, No. 2019 CA 000126 (D.C. Sup. Ct.

Jan. 8, 2019), this time alleging more of the same unlawful and deceptive conduct despite the

previous agreement to refrain from this behavior:

> [S]ince entering into the [settlement agreement], TSI has continued
> to engage in cancellation practices in violation of both the
> [settlement agreement] as well as the [consumer protection laws].
> In particular, TSI makes misrepresentations about its cancellation
> policies and fees to lure consumers to purchase memberships. For
> example, consumers are told that they may cancel at any time for
> free, when, in fact, TSI requires approximately six weeks' notice
> and charges cancellation fees. TSI also maintains policies that
> make it extremely difficult for consumers to cancel their
> memberships and TSI fails to inform consumers of these policies.
> As a result, consumers believe that they have taken the appropriate
> steps to cancel their memberships, but TSI continues to charge
> consumers for months (and sometimes years). In some cases,
> consumers have continued being charged even after receiving
> emails confirming their cancellation or being verbally assured by
> TSI representatives that their memberships had been effectively
> cancelled.  Adding to this confusion, TSI does not provide written
> membership contracts to consumers that include its cancellation
> policies, even after consumers request copies.

The DC AG also alleged – identically to the Lehnert and Tuan plaintiffs – that:

> TSI uses an electronic signing pad when signing up consumers for
> memberships at its facilities. TSI representatives verbally
> communicate the terms of membership to consumers.  As
> described above, however, TSI representatives make false and
> misleading statements about consumers' membership terms that
> contradict the terms in TSI's membership contracts.  TSI does not
> allow consumers to view the terms of membership when signing
> up.  Instead, consumers are asked to sign an electronic pad without
> having the opportunity to read or review the terms of their
> membership agreements.

12.     The DC AG sought to "stop TSI from engaging in the unlawful trade practices"

including making deceiving or misleading statements to consumers about the cancellation of

their memberships and/or making untrue or misleading representations regarding its cancellation policies.  The DC AG also issued a press release stating:

> **It's clear that Washington Sports Club is still making money by deceiving consumers, and that is not acceptable . . . We are filing this lawsuit to protect District consumers and to warn businesses that if they profit by misleading or hiding information, we will hold them accountable for breaking the law . . .** TSI is violating both consumer protection laws and a 2016 settlement agreement by misleading consumers about the terms of membership agreements, failing to inform them of the gym's cancellation policies, and continuing to charge them even after they attempt to cancel their gym memberships, among other deceptive business practices. [We are] seeking to stop TSI's illegal conduct, provide relief for consumers who were harmed, and impose civil penalties.[5]

13.     Similarly, the Better Business Bureau ("BBB") has received an outrageous number of complaints from consumers regarding TSI's conduct.  Over the last three years, the BBB has received well over 1,000 consumer complaints from TSI's gym members.  Not surprisingly, the BBB gives the company an overall "F" grade and customer reviews yield a score of one-star out of five-stars:[6]



---

footnotes

[5]      Available at:  https://oag.dc.gov/release/ag-racine-sues-washington-sports-club-misleading (last accessed March 25, 2020).

[6]      Available at: https://www.bbb.org/us/ny/new-york/profile/health-club/new-york-sports-clubs-0121-554#overview (last accessed March 25, 2020).

14.     TSI's "F" rating with the BBB is not the result of one "bad apple" that brings down the rest of the company.  To the contrary, each NYSC gym location represented on the BBB website has been given the same failing grade:

| New York Sports Clubs | | New York Sports Clubs | |
|---|---|---|---|
| (212) 246-6700 | F | (212) 246-6700 | F |
| 888 7th Ave Ste 1801, New York, NY 10106-0001 | | 131 E 31st St, New York, NY 10016-6803 | |
| New York Sports Clubs | | New York Sports Clubs | |
| (212) 246-6700 | F | (212) 246-6700 | F |
| 1657 Broadway, New York, NY 10019-6700 | | 2162 Broadway, New York, NY 10024-6620 | |
| New York Sports Clubs | | New York Sports Clubs | |
| (212) 246-6700 | F | (212) 246-6700 | F |
| 1601 Broadway, New York, NY 10019-7434 | | 248 W 80th St, New York, NY 10024-7608 | |
| New York Sports Clubs | | New York Sports Clubs | |
| (212) 246-6700 | F | (212) 246-6700 | F |
| 502 Park Ave, New York, NY 10022-1108 | | 303 Park Ave S, New York, NY 10010-3601 | |
| New York Sports Clubs | | New York Sports Clubs | |
| (212) 246-6700 | F | (212) 246-6700 | F |
| 575 Lexington Ave, New York, NY 10022-6102 | | 151 E 86th St, New York, NY 10028-2106 | |
| New York Sports Clubs | | New York Sports Clubs | |
| (212) 682-4440 | F | (212) 246-6700 | F |
| 200 Park Avenue 3rd floor, New York, NY 10166 | | 1637 3rd Ave, New York, NY 10128-3637 | |
| New York Sports Clubs | | New York Sports Clubs | |
| (212) 246-6700 | F | (212) 246-6700 | F |
| 633 3rd Ave, New York, NY 10017-6706 | | 10 Irving Pl, New York, NY 10003-3551 | |
| New York Sports Clubs | | New York Sports Clubs | |
| (212) 246-6700 | F | (212) 246-6700 | F |
| 404 5th Ave, New York, NY 10018-2797 | | 34 W 14th St, New York, NY 10011-7508 | |
| New York Sports Clubs | | New York Sports Clubs | |
| (212) 246-6700 | F | (212) 246-6700 | F |
| 61 W 62nd St, New York, NY 10023-7015 | | 5 Penn Plz Fl 4, New York, NY 10001-1843 | |
| New York Sports Clubs | | New York Sports Clubs | |
| (212) 246-6700 | F | (212) 246-6700 | F |
| 50 W 34th St, New York, NY 10001-3097 | | 151 Reade St, New York, NY 10013-3826 | |
| New York Sports Clubs | | New York Sports Clubs | |
| (212) 246-6700 | F | (212) 246-6700 | F |
| 614 2nd Ave, New York, NY 10016-4889 | | 125 7th Ave, New York, NY 10011-1802 | |
| New York Sports Clubs | | New York Sports Clubs | |
| (212) 246-6700 | F | (212) 246-6700 | F |
| 270 8th Ave, New York, NY 10011-1619 | | 217 Broadway, New York, NY 10007-2909 | |
| New York Sports Clubs | | New York Sports Clubs | |
| (212) 246-6700 | F | (212) 246-6700 | F |
| 30 Wall St, New York, NY 10005-2201 | | 30 Cliff St, New York, NY 10038-2825 | |

15.     Incredibly, after all of these legal actions – an enforcement action by the DC AG, the 55-plaintiff Lehnert federal class action lawsuit, a second 10-plaintiff Tuan federal class-action lawsuit, and a second enforcement action by the DC AG (not to mention hundreds of

consumer complaints through online and other channels)[7] – TSI *still* refuses to take any action to change its conduct.  Even a health and economic crisis will not change TSI's "business model."

16.     In this action, TSI's conduct is particularly reprehensible as it is stealing hard-earned money New Yorkers now need more than ever to pay for the necessities of life – such as food and rent for themselves and their families – despite the fact that its gyms are closed and TSI is not able to provide the services for which it is charging customers.

17.     Ms. Namorato, together with the Class she seeks to represent, brings this action to send a message for once and for all to TSI that this conduct will not be tolerated, whether in New York or elsewhere.  Ms. Namorato seeks declaratory, injunctive and monetary relief – in the greatest amount permitted by law – due to TSI's unlawful conduct in violation of New York General Business Law ("GBL") §349 and §624 and for common law breach of contract.

## JURISDICTION AND VENUE

18.     The Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because there is diversity of residence of the named parties.  The Court also has diversity jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. 1332(d), because the proposed Class has more than 100 members, contains at least one member of diverse citizenship from Defendants and the amount in controversy exceeds $5 million.

19.     The Court has personal jurisdiction over Defendants because Defendants are authorized to and do conduct substantial business in the Southern District of New York.

---

[7]     TSI has also stated in its 2020 10-K report that the New York City Department of Consumer Affairs is also pursuing claim against the company.  See https://investor.mysportsclubs.com/static-files/3218e839-c8aa-4d2a-ad14-907e8f27ffd6 (last accessed March 25, 2020).

20.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), because a substantial part of the events giving rise to this action occurred in this District as Defendants' policies and practices were made and acted upon within this District.

## PARTIES

21.     Plaintiff Mary Namorato is an adult resident of New York County, New York. Ms. Namorato has been a NYSC gym member from approximately January 2019 through the present.

22.     Defendant Town Sports International, LLC is a domestic limited liability company with its primary business being the running and operating of gyms under the brands New York Sports Clubs, Boston Sports Clubs, Washington Sports Clubs and Philadelphia Sports Clubs, and which has a principal place of business located at 5 Penn Plaza, 4th Floor, New York, New York 10001.

23.     Defendant Town Sports International Holdings, Inc. d/b/a New York Sports Clubs is a foreign corporation incorporated in Delaware with its primary business being the running and operating of gyms under the brands New York Sports Clubs, Boston Sports Clubs, Washington Sports Clubs and Philadelphia Sports Clubs, and which has a principal place of business located at 1001 US North Highway 1, Suite 201, Juniper, Florida 33477.

## FACTUAL ALLEGATIONS

### I.     Background

24.     Town Sports International, LLC is one of the largest owners/operators of fitness clubs in the country with approximately 605,000 current members of approximately 186 gyms located in New York, Massachusetts, Washington, D.C., Pennsylvania, Connecticut, Maryland,

New Jersey, Rhode Island and Virginia.[8]  NYSC is far and away TSI's largest brand with 99 locations.

25.     TSI's annual revenue is approximately $466 million per year, the vast bulk of which comes from membership fees charges.  According to TSI's website, memberships range in rate from approximately $30/mo. to $120/mo.  Upon information and belief, nearly all of TSI's memberships are paid through credit cards maintained on file which are subject to automatic monthly or annual charges.

26.     TSI and its customers enter into contracts (either verbal or written) which provide that TSI will provide access to its gym facilities in exchange for these monthly membership dues.  Accordingly, to the extent a customer does not make its membership dues payments, TSI will revoke that customer's gym access.  Upon information and belief, TSI regularly revokes gym access to members who stop paying membership dues.

27.     Moreover, at the time of enrollment, TSI has a reported practice in which its sales representative verbally states the terms of membership and obtain customer agreement to those terms.  These sales representatives state the terms to be that the customer will pay a monthly (or annual) membership fee in exchange for gym services and access, and that the contract can be terminated by the customer at any time.  The sales representative will then ask the customer to sign an electronic pad.

28.     Little do customers know, but TSI reportedly uses these electronic pads to "capture" the customer's signature and then "paste" it onto an electronic contract which has numerous terms the customer was never informed about, let alone ever agreed to.  Among these

---

[8]     Information based on TSI's 2019 Annual Report.

terms are provisions that make cancellation extremely difficult and permit TSI to continue

charging fees even after the member has cancelled his or her membership.

II.  **TSI's Response to the Novel Coronavirus/COVID-19 Pandemic**

29.     In February and early-March 2020, the novel coronavirus pandemic began its

sweep through the United States.  As of the date of this filing, throughout the country there have

been almost 70,000 reported positive tests more than 1,000 deaths.  New York State has been hit

particularly hard and is widely considered the domestic epicenter of this crisis.  New York State

has had more than 30,000 positive tests and almost 400 deaths.

30.     This existential crisis has plunged the entire country into an economic recession.

New Yorkers are feeling a particularly hard economic hit.  Reports have stated that 29 percent of

New York households have reported a job loss, and unemployment filings and inquiries are

currently reaching unprecedented levels.  The federal government is weighing an unprecedented

multi-trillion dollar spending bill to save the economy.

31.     Amid this health and economic crisis, TSI announced that it was closing all gyms

in New York, New Jersey and Connecticut (all NYSC branded gyms) effective 8:00 p.m. on

March 16, 2020.  TSI announced that these closures were effective immediately and would

continue indefinitely pending further notification.  NYSC's website announces these closures:

**Emergency Alert!**
In adherence with State and Federal guidelines concerning COVID-19, also known as Coronavirus, we will be temporarily closing all of our NY, NJ and Connecticut clubs starting 8PM on March 16th until further guidance from the state government. We will miss all of our valued members and whenever this passes we'll be back at our clubs waiting for you.

32.     However, despite closing its gyms, TSI has continued to charge customers for

membership dues, has retained the portion of previously-received membership dues which were

unused *and* has made it excessively difficult for customers to cancel their memberships during this difficult time.

33.     TSI has engaged in fraudulent consumer conduct in that it misrepresented to customers that it would provide gym services and gym accessibility in exchange for membership dues.  However, it has taken and/or retained membership dues at a time when it is not providing gym services or gym accessibility.  TSI has engaged in further fraudulent consumer conduct by misrepresenting to customers that they could cancel their memberships at any time, but then refusing to honor customer cancellation requests.

34.     TSI has breached its contracts with its customers by taking, accepting and/or retaining membership dues and failing to provide the contractually-agreed-upon services.  TSI has further breached its contracts by telling customers they could cancel their memberships at any time but then refusing to honor cancellation requests.

## III.    PLAINTIFF MARY NAMORATO

35.     On or around January 28, 2019, Ms. Namorato joined the NYSC located at Grand Central Station in New York City.

36.     Ms. Namorato enrolled by visiting the Grand Central Station location in person and meeting with a sales representative named Christopher Starr.

37.     Mr. Starr informed Ms. Namorato that TSI would offer her a particular type of gym membership for $69.99 per month, which would be automatically billed to her credit card. Mr. Starr also informed Ms. Namorato that she could cancel her membership with no problem.

38.     Ms. Namorato was never told she needed to engage in any particular type of communication to effectuate a cancellation request or "jump through hoops" to cancel her membership.

39.     Ms. Namorato was instructed to sign an electronic pad to effectuate this agreement and was never told that her signature would be superimposed onto any contract or used for any purpose such as to say she agreed to any other terms.  The electronic pad Ms. Namorato signed did not display any contract terms.

40.     On March 1, 2020, TSI charged Ms. Namorato $69.99 for her monthly use and access to TSI's gyms.  Ms. Namorato paid this amount.

41.     On March 16, 2020, and through to the present and continuing indefinitely, TSI has ceased providing Ms. Namorato any gym services or gym accessibility.

42.     TSI has not returned and has retained Ms. Namorato's payment for services during a period in which TSI has not provided the agree-upon services.

43.     TSI has not communicated with Ms. Namorato in any manner as to how it will handle the coronavirus crisis.

44.     On March 17, 2020, Ms. Namorato emailed TSI at their unintentionally ironically named email address:  HereToHelp@tsiclubs.com.  Ms. Namorato asked for information concerning suspension of membership charges while the gyms were closed.  No one from TSI ever responded.

45.     Ms. Namorato has also filed several similar complaints via TSI's Facebook page. However, TSI has refused to provide Ms. Namorato any information about how it will handle her cancellation request or whether it will ensure she is not charged and/or refunded for unused membership fees.

46.     As a result, Ms. Namorato sought help from the New York City Public Advocate's office and the New York State Attorney General's office ("NY AG"), submitting complaints to each office regarding TSI's conduct.

47.     Ms. Namorato was informed by the NY AG's office that – despite the NY AG's office insistent to TSI's senior leadership that it was improper – "**New York Sports Club is not automatically freezing or cancelling memberships, is only permitting members to freeze or cancel their membership by mail, and freezes and cancellations are subject to certain fees**"

48.     Ms. Namorato has been charged membership fees for March which have not been used and have not been refunded.  Ms. Namorato has also been denied her right to cancel her membership at any time upon request.

49.     This conduct constitutes fraudulent consumer conduct in violation of GBL §349, §624 as well as a common law breach of contract.

## CLASS ACTION ALLEGATIONS

50.     Plaintiff brings her claims as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and on behalf of all other similarly situated persons who were (i) charged fees for a period in which services were not provided, or (ii) were not permitted to cancel their memberships after TSI refused to provide the agreed-upon services (the "Class").

51.     The claims of the Class are the same as or substantially similar to those of Plaintiff, and the Class, like Plaintiff, has been subject to the same unlawful conduct.

52.     As a result of Defendants' conduct as alleged herein, Defendants have engaged in violations of GBL §349 and §624, as well as engaged in common law breach of contract.

53.     Defendants' violations of GBL §349, §624 and common law breach of contract have been willful, repeated, knowing, intentional and without a good-faith basis, and have significantly damaged Plaintiff and the Class.

54.     As a result of Defendants' conduct, Defendants are liable to Plaintiff and the Class for the full amount of any economic and monetary loss suffered by Plaintiff and the Class,

the full value of the services Plaintiff and the Class have been denied and/or not had access to and any and all other actual, statutory or other applicable damages.

55.     Certification of the Class's claims as a class action is the most efficient and economical means of resolving the questions of law and fact common to Plaintiff's claims and the claims of the Class.

56.     Plaintiff has standing to seek such relief because of the adverse effect that Defendants' unlawful conduct has had on her individually and on members of the Class.

57.     Without class certification, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.

58.     Certification of the Class is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for Plaintiff, the Class and Defendants.

59.     Plaintiff's claims raise questions of law and fact common to the Class.  Among these questions are:

> a.     Whether Defendants contracted with Plaintiff and the Class to provide gym services;
>
> b.     Whether Defendants charged Plaintiff and the Class for services which were not provided;
>
> c.     Whether Defendants retained payments from Plaintiff and the Class for services which were not provided;
>
> d.     Whether Defendants engaged in deceptive and/or misleading consumer conduct towards Plaintiff and the Class;
>
> e.     Whether Defendants' unlawful conduct towards Plaintiff and the Class constitutes a violation of GBL §349 and §624.

      f.     Whether Defendants' unlawful conduct towards Plaintiff and the Class constitutes a breach of contract.

      g.     Whether Defendants' conduct was and/or has been intentional.

60.    These common questions of law and fact arise from the same course of events, and each Class member will make similar legal and factual arguments to prove liability.

61.    Plaintiff is a member of the Class that she seeks to represent.

62.    Plaintiff's claims are typical of the claims of the Class.

63.    The relief Plaintiff seeks for the unlawful conduct complained of herein is also typical of the relief sought on behalf of the Class.

64.    Plaintiff's interests are co-extensive with those of the Class that she seeks to represent.

65.    Plaintiff is willing and able to represent the Class fairly and to vigorously pursue her similar individual claims in this action.

66.    Plaintiff has retained counsel who are qualified and experienced in class action litigation, and who are able to meet the time and fiscal demands necessary to litigate a class action of this size and complexity.

67.    Defendants have acted or refused to act on grounds generally applicable to the Class, making final injunctive and declaratory relief appropriate with respect to the Class.

68.    Injunctive and declaratory relief is a significant component of the relief sought by Plaintiff on behalf of herself and the Class.

69.    The common issues of fact and law affecting Plaintiff's claims and those of the Class members, including the common issues identified above, predominate over any issues affecting only individual claims.

70.     The Class is so numerous that joinder of all members is impracticable.  While the exact number of the Class is unknown at the present time, it is estimated that the Class is comprised of at least 250,000 members.

**FIRST CLAIM FOR RELIEF**
**(New York General Business Law §349)**
*On Behalf of Plaintiff and the Class*

71.     Plaintiff, on behalf of herself and the Class, realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

72.     As alleged herein, Defendants have been engaged, and continue to engage, in consumer-oriented conduct towards Plaintiff and the Class that was and continues to be false, misleading and deceptive in a material way.

73.     Plaintiff and the Class justifiably relied on Defendants' misrepresentations that Defendants would provide gym services and gym accessibility in exchange for membership dues and/or fees.

74.     Plaintiff and the Class suffered, and continue to suffer, injury and damages as a result of the deceptive conduct alleged herein, including, but not limited to:

- Loss of monies paid to Defendants for periods in which gym services and gym accessibility were not provided;

- Loss of monies paid to Defendants for periods after which a request for cancellation was made.

75.     Defendants' conduct constitutes a willful violation of GBL §349.

76.     Plaintiff, on behalf of herself and the Class, seek the maximum amount of damages available by law for Defendants' unlawful conduct.

## SECOND CLAIM FOR RELIEF
### (New York General Business Law §624)
#### *On Behalf of Plaintiff and the Class*

77.     Plaintiff, on behalf of herself and the Class, realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

78.     GBL §624(1) provides that:

> Every contract for services at a planned health club or a health club under construction shall, at the option of the buyer, be voidable in the event that the health club and the services to be provided pursuant to such contract are not available within one year from the date the contract is executed by the buyer.

79.     Defendants violated this provision insofar as TSI has not permitted Plaintiff and the members of the Class to cancel and/or void their contracts.

80.     GBL §624(3) provides that gym customers may cancel their memberships "[i]f the services cease to be offered as stated in the contract."

81.     Defendants violated this provision by refusing to cancel memberships despite ceasing to offer services as stated in the contract.

82.     Plaintiff, on behalf of herself and the Class, seek the maximum amount of damages available by law for Defendants' unlawful conduct.

## THIRD CLAIM FOR RELIEF
### (Breach of Contract)
#### *On Behalf of Plaintiff and the Class*

83.     Plaintiff, on behalf of herself and the Class, realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

84.     Defendants entered into contracts (both written and unwritten) with Plaintiff to provide gym services and accessibility to them in exchange for monetary consideration.  As a

term of these contracts, Plaintiff and/or the Class were permitted to cancel their memberships at any time.

85.     As alleged herein, Defendants have breached their contracts with Plaintiff and/or the Class by failing to provide gym services and accessibility yet continuing to charge and/or retain membership dues.

86.     As alleged herein, Defendants have breached their contracts with Plaintiff and/or the Class by refusing to allow Plaintiff and/or the Class to cancel their memberships at any time.

87.     As alleged herein, as a result of Defendants' breach, Plaintiff and the Class have suffered, and continue to suffer, damages, including, but not limited to, the membership dues charges and/retained.

88.     Plaintiff, on behalf of herself and the Class, seek the maximum amount of damages available by law for Defendants' unlawful conduct.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, respectfully requests that this Court:

A.     Declare that the practices complained of herein are unlawful under New York State statutory and common law;

B.     Enjoin Defendants from continuing to engage in these unlawful practices;

C.     Enjoin Defendants from retaliating against Plaintiff and the Class;

D.     Certify this action as a class action pursuant to Fed. R. Civ. P. 23;

E.     Designate Plaintiff as a representative of the Class;

F.     Designate Plaintiff's counsel as counsel of record for the Class;

G.      Determine the damages sustained by Plaintiff and the Class as a result of

Defendants' unlawful conduct, and award those damages against Defendants and in favor of the

Plaintiff and the Class, plus such pre-judgment and post-judgment interest as may be allowed;

H.      Award Plaintiff and the Class any applicable statutory damages;

I.      Award Plaintiff and the Class any and all other applicable damages;

J.      Award Plaintiff and the Class their reasonable attorneys' fees and costs; and

K.      Grant Plaintiff and the Class such other and further relief that the Court deems

just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff, on behalf of herself and the Class, hereby demands a trial by jury on all issues

of fact and damages.

Dated: March 26, 2020
       New York, New York                         Respectfully submitted,

                                                  **WIGDOR LLP**

                                                  By:

                                                      David E. Gottlieb
                                                      Taylor J. Crabill

                                                  85 Fifth Avenue
                                                  New York, NY 10003
                                                  Telephone:  (212) 257-6800
                                                  Facsimile:  (212) 257-6845
                                                  dgottlieb@wigdorlaw.com
                                                  tcrabill@wigdorlaw.com

                                                  *Attorneys for Plaintiff and*
                                                  *Proposed Class Counsel*